NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAUDE B. TOWNSEND,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br><br>        Defendant. | Civil Action No. 12-cv-2158 (PGS)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter is before the Court on the appeal of Plaintiff, Claude B. Townsend ("Townsend" or "Plaintiff") of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his request for a period of disability and disability insurance benefits. Plaintiff filed his application for disability insurance benefits on April 7, 2009 alleging disability beginning on August 28, 2008 due to bilateral carpel tunnel syndrome and a right shoulder condition. The claim was denied initially and on reconsideration, and then on November 22, 2010, a hearing was held before Brian H. Ferrie, ALJ. Plaintiff appeared and testified on his own behalf without the assistance of an attorney or other representative[1].

---

[1] In his opinion, the ALJ indicates that Mr. Townsend was informed of his right to representation, and that Plaintiff chose to appear and testify on his own.

1

As Plaintiff is representing himself in this matter, the Court is proceeding in a less stringent manner than with an ordinary litigant, and Plaintiff is entitled to liberal construction of the Court's rules. *See*, *Bryen v. Becker*, 785 F. Supp. 484, 485 (D.N.J. 1991).

The issue before the Court is whether substantial evidence supports the Administrative Law Judge's (ALJ) determination that the medical and psychiatric evidence, as well as Plaintiff's statements, demonstrated that he retained the residual functional capacity ("RFC") to perform work which existed in significant numbers in the national economy from August 28, 2008, his alleged onset of disability date, through December 16, 2010, the date of the ALJ's decision.

Plaintiff is a high school graduate who was 35 years old on his alleged onset of disability. His past relevant work experience is as a bus driver. (R. 96, 118-19). As part of Plaintiff's disability application, he completed activities of daily living questionnaires. (R. 102-09, 134-41). In those questionnaires, Plaintiff stated that he took care of his own personal grooming and hygiene needs; prepared simple meals; vacuumed the floor; ironed his clothes; walked outside; drove a car; used public transportation; grocery shopped; visited the library; read; watched television; went to the post office; and socialized. (R. 104-06, 134-38). Plaintiff stated that he had no problems paying attention; no difficulty finishing chores he started; no difficulty following written and/or spoken instructions; no problems socializing with friends and relatives; and got along well with authority figures. (R. 107-08, 139-40).

A hearing in this matter was held on November 22, 2010.  Plaintiff testified that he was working as a bus driver for New Jersey Transit when he was injured in an accident at work in January of 2008. (R. 26, 28). He was on disability leave from the date of the accident until he was fired by New Jersey Transit in August 2008. (R. 25-26).  After more than a year, Plaintiff

2

began looking for work in December 2009. He returned to work in September 2010 as a driver for a wheelchair lift ambulance company, and he worked part-time as a security guard. (R. 22, 30).

Medical Records and Reports

Dr. Chirag Shukla, a neurologist, treated Plaintiff for complaints of pain and numbness in his hands from April 2008 through August 2008. (R. 193-99). Dr. Shukla reported that Plaintiff's gait was normal and that he exhibited full muscle strength throughout his arms and legs. (R. 194, 195, 196). An April 24, 2008 electromyograph/nerve conduction study (EMG/NCS) revealed bilateral carpel tunnel syndrome, more severe on the right and moderate on the left. (R. 198-99). Dr. Shukla diagnosed bilateral carpel tunnel syndrome and referred Plaintiff to a hand specialist. (R. 195). Plaintiff treated at Mercer-Bucks Orthopaedics for complaints of bilateral hand and right shoulder pain from July 2008 through December 2009. In July 2008, Dr. Edward Ford reviewed Plaintiff's April 2008 EMG/NCS and assessed moderately severe right median neuropathy and moderate left median neuropathy. (R. 210). Dr. Ford recommended a right carpal tunnel release. In September 2008, x-rays of Plaintiff's right ribs, right shoulder, and chest were normal. (R. 245-47). On November 18, 2008, a magnetic resonance imaging (MRI) of the right shoulder revealed impingement syndrome. (R. 244). In December 2008, Plaintiff complained of right shoulder pain. (R. 208). Dr. Thomas Bills reviewed an MRI of plaintiff's right shoulder and assessed right shoulder impingement. (R. 208-09). On March 30, 2009, Dr. Bills performed a Neer decompression surgery on Plaintiff's right shoulder. (R. 211-12). In June 2009, Dr. Bills observed that Plaintiff's right shoulder exhibited full functional motion, but lacked full functional strength. (R. 253). In July 2009, Dr. Ford performed a right carpal tunnel release. (R. 307-08). In

3

October 2009, Daniel Kawash, a physician's assistant, noted that Plaintiff was doing well since his right carpal tunnel release and that Plaintiff requested a left carpal tunnel release. (R. 292). In November 2009, Dr. Ford performed a left carpal tunnel release. (R. 305-06). In December 2009, plaintiff told Mr. Kawash that he was generally pleased with his left carpal tunnel release. (R. 290). He reported that the paresthesias in his left hand had completely resolved. Plaintiff stated that he had mild incisional discomfort of the left hand, but none on the right. Upon examination, Mr. Kawash observed that Plaintiff's left hand wound was well-healed. Plaintiff could fully flex and extend all digits. He exhibited full wrist motion. His sensory examination was intact. Mr. Kawash assessed that Plaintiff was doing well post-operatively and discharged him from further care. Plaintiff continued to treat with Mercer-Bucks Orthopaedics in June, 2009 postoperatively. At that time he continued to have some tingling in his hands, but had full range of motion and full functional motion in his shoulder.

On August 8, 2009, Plaintiff was seen for an intake evaluation at the Association for Advancement of Mental Health. Delores Ostrow, a social worker, observed that Plaintiff's mood was dysphoric. (R. 274). Plaintiff's affect was appropriate. His speech was normal. Plaintiff's thought process was goal directed. He had no perceptual problems nor delusions. Plaintiff was fully oriented. His energy level was decreased, but his enjoyment and interest was adequate. Plaintiff's anxiety/agitation was severe. He exhibited a good ability to concentrate, his intellect was average and his recent and remote memory skills were intact. Plaintiff's impulse control was good, he was aware of his problems, and his judgment was good. Dr. Ostrow's assessment was

as follows: Axis 1: adjustment disorder with mixed anxiety and depression GAF 65[2]. He was well groomed, had a cooperative attitude, calm motor activity, appropriate affect, normal speech and in-tact thought process. He denied hallucinations or delusions, was oriented to time place and person, and had fair judgment and insight. (R. 260).

Consultative Examinations

On August 12, 2009, Plaintiff was seen by Ronald Bagner for a consultative examination at the request of the Social Security Administration. Dr. Bagner's impression of Plaintiff's condition was post operative right shoulder impingement; post operative right carpel tunnel release. Dr. Bagner noted that an x-ray of the right shoulder showed post-operative changes, and x-rays of the wrists were unremarkable. Dr. Bagner noted that Plaintiff ambulated without difficulty, was able to get on and off the examining table without difficulty, and dressed and undressed without assistance. He was not uncomfortable in the seated position during the interview, did not use a cane or crutches, and could heel and toe walk. Plaintiff's right shoulder showed a normal range of movement. There was a bandage and splint on the right wrist that could not be evaluated at that time, but his left grip was rated as 5/5. (R. 259).

On February 4, 2010, Plaintiff was seen by Dr. Perry Shaw for mental consultative examination. On examination, Plaintiff stated that he suffers from stress and anxiety resulting from the surgery on his hands, as well as the surgery on his shoulder. He was using sertraline 50 mg (Zoloft) once in the morning for his anxiety. (R. 311). Dr. Shaw noted that Plaintiff was

---

[2] A GAF score of sixty-five signifies some mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning pretty well, with some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders- IV-TR, Front Matter, Multiaxial Assessment (2000 ed.).

never hospitalized in a mental hospital or psychiatric ward; nor has he ever attempted or planned suicide, been homicidal or treated for alcohol or substance abuse. Dr. Shaw's diagnostic impression was a GAF of 70. With regard to daily activities, Mr. Townsend was found to be able to be able to drive and take public transportation, shop, cook, clean his room, and do his laundry (with his children carrying for him). He was able to self-groom and enjoys reading. He stated that he will be going back to school and hopes to study law and become a lawyer. (R. 313).

Physical Residual Functional Capacity Assessment

Dr. S. Park, a state agency medical consultant, reviewed the evidence of record on September 5, 2009. Dr. Park found Plaintiff's limitations to be as follows. Plaintiff can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks for a total of about six hours in a 8 hour work day); sit (with normal breaks) for a total of about six hours in a 8 hour work day; push and/or pull (including operation of hand and/or foot controls) limited in upper extremities. Postural limitations were climbing ladder/rope and scaffolds, and manipulative limitations were fingering (fine manipulation) and handling (gross manipulation). There were no visual limitations, communicative limitations or environmental limitations. (R. 341).

Legal Standard

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled

unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A). *See Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

      An Administrative Law Judge employs a five-step process in determining whether a person is disabled. In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits. *Id*. § 404.1520(b). If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step. *Id*. § 404.1520(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions. *Id*. § 404.1521(a)-(b). A claimant not meeting this requirement is not disabled. *Id*. § 404.1520(c). Thus, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the C.F.R. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage. *Id.* § 404.1520(d). If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past. *Id.* § 404.1520(a)(4)(iv). The claimant, if able to resume the previous work, will not be considered disabled. *Id.* If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the national economy. *Id.* § 404.1520(a)(4)(v), 404.1520(e). This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy. *Id.* § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment. *Id.*

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record.  42 U.S.C. § 405(g). *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). *Doak*, 790 F.2d 26 at 28.  Substantial evidence has been defined as "such relevant

8

evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422. Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266 n.9.

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *see also Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder"). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s

decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. *See* 20 CFR § 404.1529. Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. A claimant's symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . .[one's] ability to do basic work activities unless 'medical signs' or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b); *Hartranft* , 181 F.3d at 362. In *Hartranft*, claimant's argument that the ALJ failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

The ALJ's Opinion

The ALJ carefully applied the five step process outlined above.

At step one of the five step process, the ALJ found that Plaintiff had engaged in substantial gainful activity in his past relevant work as a bus driver since his alleged onset date of April 28, 2008. More specifically, Plaintiff had began employment as a bus driver for disabled and handicapped people commencing on September 14, 2010. Therefore, at Step 1, the ALJ found that Plaintiff was unable to perform his past relevant work from August 28, 2008 until September 14, 2010.

At step two, the ALJ found that Plaintiff had a severe impairment of carpel tunnel

10

syndrome. This impairment was found to be severe due to the fact that the effects of the carpel tunnel did have some limitations in Plaintiff's ability to perform basic work activities. However, the ALJ found that Plaintiff's impairment did not medically equal one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404/1526). The ALJ further found that Plaintiff had the residual foundational capacity to perform light work, except that he had limited right-hand manipulation due to his carpel tunnel syndrome. Despite the limited right hand manipulation, Plaintiff was able to perform some gainful work activities. In addition, the ALJ noted that although Plaintiff's carpel tunnel syndrome could reasonably be expected to cause the alleged symptoms, his statement concerning the persistence and limiting effects of those symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment.

At the time of the Plaintiff's alleged onset date of disability, Plaintiff was 35 years old which is defined as a younger individual (20 CFR 404.1563). Using the medical-vocational rules as a framework for his decision, the ALJ found that taking into consideration Plaintiff's age, education, functional residual capacity and work experience, Plaintiff is capable of performing light work and therefore not disabled.

Conclusion

Based on the record as a whole Plaintiff's alleged restrictions are not consistent with the preponderance of the medical evidence as well as the testimony at the hearing.

Plaintiff had an accident on January 29, 2008, but continued to work until August 28, 2008. During the time period that Plaintiff was treating with doctors for pain, he was terminated from his job due to reasons not related to his injuries or medical conditions. At the hearing on

November 22, 2010, Plaintiff testified that he was looking for work since he was feeling better.

A review of the record confirms that Plaintiff's impairment did not medically equal one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404/1526).  Plaintiff does not assert that his condition met or equaled any listed impairment and does not cite to any medical evidence which demonstrates that he had an impairment which met or equaled a listing.  It is also noted that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment. Plaintiff has the burden to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment. See *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 120, n.2 (3d Cir. 2000).

Furthermore, the ALJ found that claimant's subjective complaints of pain and discomfort and resulting limitations are not credible to the extent alleged.  The Commissioner has discretion to evaluate the credibility of the Plaintiff's complaints. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006).  The credibility of witnesses is quintessentially the province of the trier of fact.  *See*, *generally*, *Scully v. U.S. Wats, Inc.,* 238 F. 3d 497 (3d Cir. 2001).  The ALJ has discretion to evaluate the credibility of Plaintiff's complaints and draw a conclusion based upon medical findings and other available information. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006).  Credibility determinations are the unique province of a fact finder. *See generally Dardovitch v. Haltzman,* 190 F.3d 125 (3d Cir. 1999) (internal quotation omitted). Inasmuch as the ALJ had the opportunity to observe the demeanor and determine the credibility of Plaintiff, the ALJ's findings are conclusive.  *See Wier v. Heckler*, 734 F. 2d 955, 962 (3d Cir. 1984).  *See also*, Social Security Ruling 96-7, 20 C.F.R. 404.1529 and 20 C.F.R. 416.969.  In

12

addition, in assessing Plaintiff's RFC, the ALJ carefully considered Plaintiff's testimony and alleged functional limitations as well as the extent to which such allegations could be reasonably accepted as consistent with the objective evidence of the record. 20 C.F.R. Sec. 404.1529; SSR 96-7.

Regulations permit the Commissioner to consider claimant's daily activities in evaluating his credibility 20 C.F.R. 404.1529(c)(3)(1). As noted previously, Plaintiff stated that he took care of his own personal grooming and hygiene needs; prepared simple meals; vacuumed the floor; ironed his clothes; went out for walks; drove a car; used public transportation; grocery shopped; went to the library; read; watched television; went to the post office; and socialized. (R. 104-06, 134-38). Based on the substantial evidence in the record as a whole, the Plaintiff is not disabled.

## ORDER

This matter having come before the Court upon the appeal of Plaintiff Claude Townsend from the Commissioner of Social Security Administration's final decision denying his application for Disability Insurance Benefits; and the Court having considered all submissions of the parties; and in light of the reasons stated above;

It is on this 19th day of April, 2013,

ORDERED that the final decision of the Commissioner of Social Security is affirmed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

13